[No. 24181-5-III. Division Three. March 8, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL LEE STEVENS, *Appellant*.

*James E. Egan* (of *James E. Egan, PS*), for appellant.

*Steve M. Lowe, Prosecuting Attorney*, and *Timothy E. Dickerson, Deputy*, for respondent.

¶1 KULIK, J. — A jury convicted Michael Stevens of four counts of first degree unlawful possession of a firearm based on a previous felony conviction in Oregon. On appeal, Mr. Stevens contends that his Oregon conviction is not comparable to any offense in Washington. He also asserts the evidence is insufficient to establish the Oregon conviction. Mr. Stevens further argues that the Washington statute prohibiting felons from possessing firearms, RCW 9.41.040, violates his due process and equal protection rights. The State cross-appeals, arguing that the court erred by granting an exceptional sentence below the standard range. We affirm the conviction and the sentence.

## FACTS

¶2 In 1989, Michael Stevens was convicted of first degree rape in Oregon, under ORS (Oregon Revised Statute) § 163.375. Oregon did not take away Mr. Stevens's right to possess firearms. In fact, on three separate occasions, Oregon gave Mr. Stevens a hunting license. And on at least two occasions, Oregon game officials checked the game tags on the animals he shot. In April 2004, Mr. Stevens was arrested in Washington, and deputies discovered one shotgun and three rifles in his home. Two of these rifles were prizes Mr. Stevens won at rodeo contests. Mr. Stevens lived in rural Franklin County where he used firearms to control snakes, vermin, and coyotes. Mr. Stevens was charged with four counts of first degree unlawful possession of firearms.

¶3 Prior to trial, Mr. Stevens filed a motion to dismiss, arguing that he had not received notice, as required under RCW 9.41.047(1), that he lost his right to possess firearms. Mr. Stevens also maintained that the sentencing court in Oregon violated his due process and equal protection rights by failing to notify him that he could not possess firearms in Washington. Mr. Stevens's motion to dismiss was denied.

¶4 At trial, Mr. Stevens stipulated that he had been convicted of a serious offense, which is an element of unlawful possession of a firearm under RCW 9.41.040(1)(a). The prosecutor read the following stipulation in the record: "It is hereby stipulated by and between the state and the defendant that the defendant has in the past been convicted of a serious offense causing him to be ineligible to own or possess a firearm." Report of Proceedings (Oct. 7, 2004) at 28. This stipulation had been requested by Mr. Stevens pursuant to *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). An *Old Chief* stipulation prevents the jury from learning the nature of the prior conviction. *Id.* at 191-92.

¶5 The jury found Mr. Stevens guilty of four counts of first degree unlawful possession of a firearm. He moved to set aside the jury verdict. He argued that first degree rape

in Oregon was not comparable to any crime in Washington and that there was no support for his convictions for unlawful possession of a firearm. The court denied this motion and imposed an exceptional sentence below the standard range. Mr. Stevens appeals, and the State cross-appeals.

## ANALYSIS

### 1. Comparable Offenses

¶6 RCW 9.41.040(1)(a) forbids possession of firearms if a person has "previously been convicted . . . in this state or elsewhere of any serious offense as defined in this chapter." Out-of-state convictions are classified according to the comparable offense definitions and sentences provided in Washington law. RCW 9.94A.525(3). The legislative purpose of this statute is to give the out-of-state convictions the same effect as in-state convictions. *State v. Cameron*, 80 Wn. App. 374, 378, 909 P.2d 309 (1996).

¶7 To that end, courts (1) identify the comparable Washington offense, (2) classify the comparable Washington offense, and (3) treat the out-of-state conviction as if it were a conviction for the comparable Washington offense. *Id.* at 378-79. When identifying the comparable Washington offense, courts compare the elements of the out-of-state crime with the elements of potential comparable Washington crimes as defined on the date the out-of-state crime was committed. *Id.* at 379.

¶8 In 1989, the elements of first degree rape in Oregon were sexual intercourse with another person by forcible compulsion. ORS § 163.375(1)(a). In 1989, the elements of second degree rape in Washington were sexual intercourse with another person by forcible compulsion. Former RCW 9A.44.050(1)(a) (1988).[1] The elements of these two offenses are identical and comparable pursuant to RCW 9.94A.525(3).

---

[1] The subsection in question in this case has not changed.

¶9 In Washington, a conviction for second degree rape is a serious offense. It follows then that second degree rape, or its equivalent offense in Oregon, disqualifies the offender from owning or possessing firearms in Washington. RCW 9.41.010(12), .040(1). An offender who possesses a firearm after a conviction for second degree rape, or its Oregon equivalent, is guilty of first degree unlawful possession of a firearm. Consequently, the court did not err by failing to dismiss this case. Mr. Stevens was properly charged and convicted of first degree unlawful possession of a firearm.

¶10 Mr. Stevens raises a sufficiency of the evidence question. He points out that he stipulated that he had been convicted of a serious offense, causing him to lose his gun rights in Washington. According to Mr. Stevens, nothing in the record establishes the elements of that offense or the facts of his conviction. In Mr. Stevens's view, his stipulation was limited and the record is insufficient to support his convictions. In response, the State maintains that it was obligated to agree to the stipulation which then effectively barred the State from presenting evidence related to Mr. Stevens's Oregon conviction. The State asserts that this evidence is admissible under the invited error doctrine.

¶11 A recent case from Division One of this court takes a different approach to this issue. In *State v. Wolf*, 134 Wn. App. 196, 139 P.3d 414 (2006), Division One applied the waiver doctrine. Under the waiver doctrine, once a defendant enters into a stipulation, he or she waives the right to require the government to prove its case on the stipulated element. *Id.* at 199. We agree with Division One's reasoning. Applying the waiver theory here, Mr. Stevens waived the right to put the State to its burden of proof on the element of having previously been convicted of a serious offense. Hence, under *Wolf*, this court need not address any argument related to whether the Oregon statute is comparable to a Washington statute.

¶12 The court did not err by failing to dismiss this case and the evidence is sufficient to support Mr. Stevens's convictions.

*2. Does RCW 9.41.040 violate due process under the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 3 of the Washington State Constitution?*

¶13 Mr. Stevens asserts that Oregon did not take away his gun rights and that Oregon officials did not tell him that it was illegal for him to possess firearms.

¶14 RCW 9.41.040(1)(a) forbids possession of firearms if a person has previously been convicted of any serious offense. The definition of a serious offense is set forth in RCW 9.41.010(12), which states that a serious offense includes "any federal or out-of-state conviction for an offense that under the laws of this state would be a felony classified as a serious offense." RCW 9.41.010(12)(o). In Washington, knowledge that possession of a firearm is unlawful is not an element of unlawful possession of a firearm. *State v. Krzeszowski*, 106 Wn. App. 638, 642-43, 24 P.3d 485 (2001). Consequently, the fact that Oregon did not take away Mr. Stevens's right to possess firearms, and Oregon officials did not inform him that it was illegal for him to possess firearms, does not prevent Washington from enforcing its statute on unlawful possession of a firearm. Mr. Stevens was convicted of a serious felony in Oregon, and was later charged in Washington under a Washington statute.

¶15 In 1994, Washington enacted RCW 9.41.047, which requires courts to notify felons if they have lost their right to possess firearms. However, this provision is limited and only those convicted in Washington after July 1, 1994 are given notice of the loss of their right to possess firearms. *State v. Reed*, 84 Wn. App. 379, 386, 928 P.2d 469 (1997).

¶16 Relying on *Lambert v. California*, 355 U.S. 225, 78 S. Ct. 240, 2 L. Ed. 2d 228 (1957), Mr. Stevens contends that the failure to give him notice of the loss of his right to possess firearms constituted a due process violation.

¶17 In *Lambert*, a municipal code required all convicted felons who remained in the city for more than five days to

register with police. The Supreme Court concluded that the statute violated due process because it lacked a notice requirement. In reaching this decision, the Court noted that the code violation was based on passive conduct. *Lambert*, 355 U.S. at 228.

¶18 Division Two of our Court of Appeals applied the *Lambert* reasoning to a statute requiring active conduct. *State v. Blum*, 121 Wn. App. 1, 4, 85 P.3d 373 (2004). *Blum* held that a defendant could be convicted of unlawful possession of a firearm, even though he or she had not received notice of the loss of his or her gun rights, because the conviction was based on active conduct. *Id.* at 5. We agree.

¶19 Finally, Mr. Stevens argues that he relied to his detriment on the omissions of the Oregon court, his probation officer, the Oregon licensing agent, and Oregon game officials. He maintains that Oregon approved his right to possess arms by issuing him a license to hunt. To support his position, Mr. Stevens relies on *State v. Leavitt*, 107 Wn. App. 361, 27 P.3d 622 (2001).

¶20 Mr. Leavitt was convicted in Washington of a crime that resulted in the loss of his right to possess firearms. Although RCW 9.41.047 had been enacted, the trial court neglected to inform Mr. Leavitt that this prohibition applied beyond his one-year probation. The trial court told Mr. Leavitt that his one-year suspended sentence was conditioned on the loss of his gun rights. The court did not inform Mr. Leavitt that the prohibition against firearms could extend beyond one year. Also, Mr. Leavitt's probation officer gave him a form indicating that RCW 9.41.047 did not apply to him. *Leavitt*, 107 Wn. App. at 363. The appellate court reversed Mr. Leavitt's conviction for unlawful possession of a firearm. The court concluded that the trial court had misled Mr. Leavitt and failed to advise him, and that Mr. Leavitt had demonstrated actual prejudice. *Id.* at 372-73.

¶21 *Leavitt* is inapplicable here. Mr. Stevens has presented no evidence showing that he was misled by the

Oregon court or that he relied on any statements or omissions.

*3. Does RCW 9.41.040, as applied to Mr. Stevens, violate equal protection?*

¶22 Mr. Stevens argues that RCW 9.41.040 and .047 violate equal protection rights granted by the United States Constitution and the Washington State Constitution.

¶23 RCW 9.41.040 and .047 establish three categories of defendants who have lost their right to possess firearms: (1) those defendants convicted in Washington after July 1, 1994; (2) those defendants convicted in Washington before July 1, 1994; and (3) those defendants convicted outside the state of Washington whether before or after July 1, 1994. *Reed*, 84 Wn. App. at 386. Significantly, even though all of these defendants have lost their right to possess firearms, only those convicted in Washington after July 1, 1994 receive actual notice of the prohibition. *Id.*

¶24 *Reed* addressed the equal protection implications of RCW 9.41.040 and .047. Minimum scrutiny is applied to considerations of an equal protection challenge to legislation that does not infringe upon a fundamental right or create suspect classifications. *Reed*, 84 Wn. App. at 386. *Reed* explained that the state's decision to give notice to persons currently convicted is rationally related to the legitimate objective of making improvements to sentencing. *Id.* at 387. As a result, *Reed* concluded that RCW 9.41.040 and .047 do not violate state and federal equal protection rights. *Id.* We agree.

*4. Did the court err by granting an exceptional sentence below the standard range?*

¶25 When reviewing an exceptional sentence, this court inquires whether: (1) the reasons supplied by the sentencing court are supported by the record; (2) those reasons support an exceptional sentence; and (3) the sentence was clearly too excessive or too lenient. *State v. Law*, 154 Wn.2d 85, 93, 110 P.3d 717 (2005). The clearly errone-

470

ous standard is applied to the first question, the de novo standard is applied to the second question, and the abuse of discretion standard is applied to the third question. *Id.* RCW 9.94A.535(1) sets forth a nonexclusive list of reasons for an exceptional sentence.

¶26 The court's findings show that the court considered a number of factors related to the crime or Mr. Stevens's culpability for the crime. These factors included that Mr. Stevens had no predisposition to break the law, that he did not conceal his possession of firearms, and that two of the convictions were based on rifles he had won as prizes at rodeo contests.

¶27 These reasons are supported in the record and also support an exceptional sentence. The sentence was not too lenient. We affirm the conviction and the exceptional sentence.

SWEENEY, C.J., and SCHULTHEIS, J., concur.

Review denied at 162 Wn.2d 1012 (2008).